UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

3M Company,

                Plaintiff,                **MEMORANDUM OPINION AND ORDER**

    v.                                        Civil No. 11-3488 ADM/TNL

Ivoclar Vivadent AG, and
Ivoclar Vivadent, Inc.,

                Defendants.

---

James W. Poradek, Esq., David J.F. Gross, Esq., Katherine S. Razavi, Esq., and Timothy M. Sullivan, Esq., Faegre Baker Daniels LLP, Minneapolis, MN, on behalf of Plaintiff.

Charles D. Ossola, Esq., and Matthew J. Ricciardi, Esq., Dickstein Shapiro LLP, Washington, DC, and David R. Marshall, Esq., Fredrikson & Byron, PA, Minneapolis, MN, on behalf of Defendants.

---

## I. INTRODUCTION

On April 6, 2012, the undersigned United States District Judge heard oral argument on Defendant Ivoclar Vivadent AG's ("Ivoclar AG")[1] Amended Motion to Dismiss [Docket No. 20]. Plaintiff 3M Company ("3M") opposes the motion. For the reasons set forth below, the motion is denied.

## II. BACKGROUND

Plaintiff 3M is a Delaware corporation with its principal place of business in St. Paul, Minnesota. Compl. [Docket No. 1] ¶ 1. Defendant Ivoclar AG is a Liechtenstein corporation with its principal place of business in Schaan, Liechtenstein. Compl. ¶ 2. Ivoclar AG is the

---

[1] Defendant Ivoclar Vivadent, Inc. joined in the motion to dismiss. However, Plaintiff, by letter dated April 5, 2012, indicated its willingness to withdraw its claims against Ivoclar Vivadent, Inc. Those claims are hereby dismissed without prejudice.

assignee of U.S. Patent No. 5,936,006 (the "'006 Patent"). Compl. ¶ 4. Ivoclar AG is also the owner of German Patent No. 196 17 931 (the "German Patent"). See Compl. ¶ 20. Both patents relate to a nanoparticle dental material used in filling composites, fixing cements, and adhesives. See Compl. Ex. A at [57] (describing '006 Patent and use of nanoparticles for dental material); Compl. Ex. A col.1, ll.6-8 (describing uses of '006 Patent for filling composites, fixing cements, and adhesives); Compl. ¶ 20 (noting German Patent is related to the '006 Patent).

3M sells dental filling compounds under its Filtek brand. See Decl. of Donna Marie Hartnett in Supp. of Defs.' Mot. to Dismiss [Docket No. 23] ("Hartnett Decl.") ¶ 3. On October 13, 2011, Ivcovlar AG sent 3M a letter alleging 3M's Filtek products infringed the '006 Patent and the German Patent. Compl. ¶ 19. On November 1, 2011, representatives from Ivoclar AG and 3M met in Washington, D.C. Hartnett Decl. ¶ 8; Decl. of Pamela Stewart [Docket No. 27] ("Stewart Decl.") ¶ 4. The parties discussed entering into a Confidential Disclosure Agreement ("CDA"), which would include a covenant not to sue for a limited period of time. See Hartnett Decl. ¶ 9; Stewart Decl. ¶ 6. Before the CDA was executed, Ivoclar disclosed it had filed an action in Germany (the "German action") alleging infringement of the German Patent. Hartnett Decl. ¶ 9; Stewart Decl. ¶ 6. 3M had not been served with process in the German action and had no prior notice of the German action. See Stewart Decl. ¶ 5. In Germany, the courts are responsible for service of process. See id. German courts will effect service of process once a fee has been paid. See id. At the time of the CDA, Ivoclar AG had not yet paid the German court's fee, and therefore 3M had not yet been served. See id. 3M alleges Ivoclar represented that it would not pay the service of process fee and the German action would not go forward. Id.

In any event, Ivoclar and 3M agreed to modify the draft CDA. As originally written the

covenant not to sue stated:

> During the term of this Agreement, IVOCLAR agrees that it will not bring a suit for infringement of the IVOCLAR Patent Rights against 3M, and 3M agrees that it will not bring a suit or other action seeking declaratory judgment or alleging invalidity, non-infringement or unenforceability of the IVOCLAR Patent Rights.

See Stewart Decl. ¶ 5; Hartnett Decl. ¶ 9.  The parties added a handwritten amendment to amend the covenant to read:

> During the term of this Agreement, with the exception of legal proceedings filed but not served in the Courts of Germany, IVOCLAR agrees that it will not bring a suit for infringement of the IVOCLAR Patent Rights against 3M, and 3M agrees that it will not bring a suit or other action seeking declaratory judgment or alleging invalidity, non-infringement or unenforceability of the IVOCLAR Patent Rights.

See Hartnett Decl. ¶ 9, Ex. C at 1; see also Stewart Decl. ¶ 5.  Ivoclar and 3M executed the CDA as modified that day, November 1, 2011.  Harntett Decl. Ex. C at 3; Steward Decl. ¶ 9.

On November 25, 2011, Ivoclar paid the service of process fee in the German action, and 3M was served on November 30, 2011.  Stewart Decl. ¶ 12, Exs. A, B.  Also on November 30, 2011, during a telephone conference, Ivoclar informed 3M it was terminating the CDA.  Hartnett Decl. ¶ 12; Stewart Decl. ¶ 13.  That same day, Ivoclar sent 3M two termination letters.  The first letter was sent with a process server, but was not delivered to 3M because the process server was turned away at 3M headquarters.  Decl. of Nicholas G. Papastavros in Supp. of Defs.' Mot. to Dismiss [Docket No. 22] ("Papastavros Decl.") ¶ 2.  The second was sent via first class mail.  Id. ¶ 3.

Later that same day, November 30, 2011, 3M filed its Complaint in this action in federal district court in Minnesota.  The next day, December 1, 2011, Ivoclar filed a patent infringement action in federal district court in Delaware.  Decl. of Timothy Sullivan [Docket No. 26] Ex. A.

3

Later on December 1, 2011, Ivoclar again sent a written termination notice to 3M, this time by email. Papastavros Decl. ¶ 4, Ex. A. Ivoclar now moves to dismiss this action arguing 3M's action was barred by the CDA. 3M argues Ivoclar breached the CDA first, and in any event, dismissal is not an appropriate remedy to enforce the CDA.

## III.  DISCUSSION

**A.       Standard of Review**

Ivoclar AG's motion originally disputed personal jurisdiction, but it has since abandoned those arguments. Ivoclar AG's motion also originally disputed the Court's subject matter jurisdiction over claims against Ivoclar Vivadent, Inc. 3M's withdrawal of claims against Ivoclar Vivadent, Inc. renders those arguments moot. The sole remaining basis for Ivoclar AG's motion is failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Rule 12(b)(6) provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering such a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. Ossman, 825 F. Supp. at 880. "A motion to dismiss should be granted as a practical matter . . . only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995).

Generally, only the facts alleged in the Complaint and materials attached to the Complaint as exhibits may be considered in ruling on a 12(b)(6) motion. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). However, materials that are part of the public record, and in some instances materials that do not contradict the complaint, may be considered. State ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir. 1999). Materials that are "necessarily embraced by the pleadings" may also be considered. Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012).

### B. Dismissal is Not a Remedy for Breach of Temporary Covenant Not to Sue Under Minnesota Law

The parties strenuously argue whether the present motion must be converted to one for summary judgment due to the submission of matters outside the pleadings, and whether conversion would necessitate further discovery. The matters outside the pleadings, other than the CDA itself, will not be considered. Therefore, the motion need not be converted.

The motion will not be converted to summary judgment because conversion is unnecessary. 3M's allegations recognize the existence of the CDA. See Compl. ¶ 21 (noting that 3M and Ivoclar AG entered into an agreement that included Ivoclar AG's covenant not to sue). 3M further alleges that on November 30, 2011, "Ivoclar representatives stated that Ivoclar AG was rescinding its agreement not to file suit against 3M . . . ." Compl. ¶ 22. Much of the material extraneous to the Complaint submitted by the parties relates to whether that fact resulted in the termination of the CDA. However, even if the CDA was not terminated and 3M breached the CDA by initiating this lawsuit, as urged by Ivoclar AG, under Minnesota law[2] dismissal of

---

[2] The parties do not dispute that Minnesota law applies to the motion.

3M's claims is not a remedy for that breach.

Under Minnesota law, remedies for breach of contract are usually limited to monetary damages. See, e.g., Frank v. Jansen, 226 N.W.2d 739, 744–45 (Minn. 1975) (discussing various approaches for measuring damages in breach of contract case). Where damages are inadequate, however, courts may grant equitable remedies, including ordering specific performance. Metro. Sports Facilities Comm'n v. Minn. Twins P'ship, 638 N.W.2d 214, 227 (Minn. Ct. App. 2002).

In Kunza v. St. Mary's Regional Health Center, the Minnesota Court of Appeals addressed whether dismissal of an action is an appropriate remedy for breach of a temporary covenant not to sue. 747 N.W.2d 586, 591–593 (Minn. Ct. App. 2008). In Kunza, the plaintiff argued dismissal was unavailable on the grounds that the defendant breached their contract first, specific performance is a disfavored remedy, plaintiff substantially performed, and the defendant had waived or abandoned its arguments for dismissal. Id. at 589. Rather than addressing each argument in turn, the Minnesota Court of Appeals held that dismissal of an action is not an available remedy for breach of a temporary covenant not to sue—the only remedy is monetary damages. Id. at 593. The Kunza court reasoned that a *permanent* covenant not to sue (i.e. a release) is a relinquishment of a cause of action, whereas a *temporary* covenant not to sue is only an agreement to temporarily refrain from bringing a cause of action. Id. at 591–92. The Kunza court explained that dismissal is an appropriate remedy for a release because it prevents circuity of actions—the monetary damages for a breach of a release would be equal to whatever damages were recovered by the breaching party. Id. at 593. The Kunza court then concluded that because damages for breach of a temporary covenant not to sue will not mirror damages in an action brought in breach of the covenant, as they do for a release, dismissal is not an appropriate

remedy. Id. In addition, the Kunza court recognized that under Restatement (Second) of Contracts § 285 (1979) a suit brought in breach of a temporary covenant not to sue is barred until the covenant expires, but rejected that approach. Id.

This Court, a federal district court sitting in Minnesota applying Minnesota state law, is bound to apply Minnesota law only as articulated by the Minnesota Supreme Court. See West v. Am. Tel. & Tel. Co., 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts. . . unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted."). Federal courts, however, are not free to disregard intermediate state appellate bodies. Id. at 236–37. Rather, it is the duty of federal courts to ascertain from all available data what state law is. Id. at 237. Intermediate appellate decisions may be disregarded by a federal court only if persuasive data exists that the state's highest court would decide otherwise. Id. Therefore, decisions of the Minnesota Court of Appeals are persuasive authority and must be followed in federal court when they are the best evidence of Minnesota law. Bureau of Engraving, Inc. v. Federal Ins. Co., 5 F.3d 1175, 1176 (8th Cir. 1993).

Here, the Court will apply Kunza as the best evidence of Minnesota law and hold dismissal is not an available remedy for breach of a temporary covenant not to sue. Ivoclar AG's attempts to distinguish Kunza and convince the Court to adopt the Restatement approach are unavailing. Ivoclar AG avers Kunza is inapplicable because venue was not in dispute in that case, the case was litigated to summary judgment, and the statute of limitations had passed in that case which would have precluded the plaintiff from refiling her complaint if her claims were dismissed. None of these facts, however, influenced the rationale of the Minnesota Court of

Appeals in Kunza.  Rather, the Kunza court reasoned that without relinquishment of a claim, a cause of action was not extinguished, and therefore dismissal was not appropriate.  747 N.W.2d at 591–93.

The only basis Ivoclar AG offers for believing the Minnesota Supreme Court would decide the issue differently is Minnesota's history of recognizing claims may be dismissed when barred by a release.  See Karnes v. Quality Pork Processors, 532 N.W.2d 560, 563 (Minn. 1995) ("A release is an affirmative defense to a cause of action . . . ."); Gronquist v. Olson, 64 N.W.2d 159, 164 (Minn. 1954) ("A release may, dependent upon its terms, have the effect of extinguishing a right of action, and if so, it may be pleaded as a defense to any suit on the action."); Butler v. Butler Bros., 242 N.W. 701, 704 (Minn. 1932) (affirming trial court's dismissal of claims subject to release); Joyce v. Mass. Real Estate Co., 173 N.W. 337, 338 (Minn. 1928) (distinguishing release of a single tortfeasor, which extinguishes causes of action against all other joint tortfeasors, and covenant not to sue a single tortfeasor, which does not impair right to sue others).  However, other jurisdictions have a similarly long history of distinguishing temporary covenants not to sue from releases.  See Walling v. Warren, 2 Colo. 434, 437 (Colo. Terr. 1874) ("But a covenant not to sue for a limited time was never held to bar an action brought in the meantime."); Mendenhall v. Lenwell, 5 Blackf. 125, 1839 WL 2198, at *1 (Ind. 1839) ("[T]he law is settled, that [an agreement not to sue for a limited time] is no bar to an action brought before the expiration of the given time.  Damages may be recovered for a breach in such case, but the covenant can not have the effect of a release."); Perkins v. Gilman, 8 Pick. 229, 236 (Mass. 1829) ("[A] covenant not to sue for a limited time does not operate as a release, nor can it be pleaded in bar in an action upon an obligation or other demand.").

Kunza expressly noted it was a case of "first impression" in Minnesota addressing the remedy for breach of a temporary covenant not to sue.  747 N.W.2d at 590.  Kunza also expressly distinguished prior Minnesota case law regarding releases on the grounds the covenant not to sue was only temporary and not a relinquishment of a cause of action.  Id. at 591–92.  Therefore, given the traditional distinction between releases and temporary covenants not to sue, and Kunza's express adoption of that distinction, the Minnesota caselaw concerning releases cited by Ivoclar AG is not persuasive authority that the Minnesota Supreme Court would decide Kunza differently.  The Court follows Kunza, and Ivoclar AG's motion is denied.

Furthermore, even if the Court were persuaded not to follow Kunza, Ivoclar AG's motion would still be denied.  Under Minnesota law, compelling specific performance requires both weighing of equities and inadequate remedies at law.  Metro. Sports Facilities Comm'n, 638 N.W.2d at 227; see also Schmitz v. Rinke, Noonan, Smoley, Deter, Colombo, Von Korff & Hobbs, Ltd., 783 N.W.2d 733, 747 (Minn. Ct. App. 2010) ("Specific performance is not an available remedy where there is an adequate remedy at law.") (citation omitted).  Here, compelling specific performance of the temporary covenant not to sue by dismissing this action would be unwarranted.  Ivoclar AG has commenced a parallel action in Delaware.  With that parrallel lawsuit, litigation is now inevitable.  Indeed, Ivoclar AG has recognized that the only significance of its motion is to determine venue.  Other remedies, such as a motion to transfer venue, exist to correct an improper venue.  Ivoclar AG's motion is denied on that basis as well.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Ivoclar AG's Amended Motion to Dismiss [Docket No. 20] is

**DENIED**, and all claims against Ivoclar Vivadent, Inc. are **DISMISSED WITHOUT PREJUDICE**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  April 26, 2012.